On behalf of the appellant, Mr. and Ms. Mary A. Cormier, on behalf of the appellee, Ms. Phyllis Jacobson. Well, I think Ms. Perkel is here on behalf of the appellant, but it's okay. It's like that law school exam. Okay, we're going to switch sides today. She's on the right side. She's on the correct side. And really, the sides don't matter so much as I know that she wrote the brief and I know that you wrote the other brief. And that's good for me. So thank you for stepping up and good morning, counsel. Good morning, Your Honor. May it please the Court. Thomas Holloway appeals from his conviction for violation of bail bond that arose from his failure to attend the trial of the cause. The first cause being certain drug allegations that were pending against him. Our argument on this appeal has to do with our claim of reversible error in the bail bond trial. The quote-unquote parking lot statement? The parking lot statement. So that's what we are complaining about. So the Court seems to be well aware then that there was a conversation between original defense counsel on the drug charges and Mr. Holloway on the date of trial. And this conversation had to do with the whereabouts of Mr. Holloway when he did not appear in the courtroom for trial. Now, how do you overcome the forfeiture that the State is arguing that this was never argued in the trial? Well, Your Honor, there were multiple proceedings, not multiple, but a few proceedings pursuant to a motion to eliminate that had been brought by the State beforehand. And it was clear at the conclusion of the motion to eliminate proceedings and the first day of trial when original defense counsel came pursuant to trial, pursuant to the State subpoena. There were multiple conversations to the extent that about the privilege, the attorney-client privilege, and the fact that the defense was not waiving this privilege. But then the defense, if I could use the term invited error here, relied on that statement to pump up the theory of his case that that statement was never made. He just wanted him to stay out of the courtroom so he can get his bond money. So how now can you come in and say that there's plain error? Well, we're not claiming plain error because we believe that the error was preserved. I'm not familiar with the portion of the record that you are especially referring to. I mean, I cannot recall that portion of the record. I do not certainly recall defense counsel saying that he was benefiting from the use of the defendant's statement. Well, I don't think he ever said, I'm benefiting from it. But he cross-examined the attorney on the statement ad infinitum. And then in closing argument, he brought it up again, the fact, even though he was precluded on cross from talking about it, he brought it up in closing argument that this lawyer just wanted the bond money. Are you telling me you never heard of that? I'm telling you that I do not recall cross-examination about the contents of the statement. I do not recall that, and I do not recall the State bringing that up in its brief. So I'm unfortunately unprepared to precisely respond to your question. But I do not recall in reading the record that there was cross-examination by defense counsel. There was attempted cross-examination by defense counsel, which the trial court sustained because he was trying to get into the theory that the defense attorney didn't want him in court because he wanted to keep the bond money. Then he argued that on closing argument, I don't think it was objected to in the court, never sustained that defense attorney on closing argument argued the same thing. So how is it now that you come in and say, you know, the privilege was never waived when he's the one who brought it out? Well, Your Honor, you're going to forgive me, but I did not read the record in the fashion in which Your Honor is representing it, and I don't see that. Maybe I read it wrong. Well, unfortunately. Didn't he use the parking lot statement to advance his theory? I'm not aware that he did. Anything about bail. Anything about bail. I think what he said specifically is, in his closing argument, Mr. Murphy said, I called him. He said he was just in the parking lot or something like that. Then he made some other comments. And then he said, the communication here just doesn't exist. He's saying that Mr. Weigel, defense attorney, is saying that Murphy Aguilou lied. And his purpose was, as Justice Shostak has suggested in the failed cross-examination, was to get whatever bond money he could and get out of Dodge. Well, I mean, I understand, and I certainly did read the record to reflect that defense counsel on the violation of bail bond charges was, in all events, attempting to discredit Murphy Aguilou. But I do not recall specifically that it was in reliance and on this particular, on the particular statement that occurred on the day of trial, the conversation. And that conversation, certainly as we've argued in our briefs, was a clear violation of the attorney-client privilege. And how? I mean, I read the briefs. I just need a little better explanation. What's the legal advice that was given? I don't believe that he's required to give a specific piece of legal advice. I mean, the case law has gone so far from the Illinois Supreme Court just to say that there's a presumption that any communication between counsel and the client is privilege. I do not believe that. Is it confidential? I beg your pardon? Was it confidential? Yes, it was confidential. Well, he's calling him from the courtroom. All those people are present. How confidential can that be? Well, I don't think we know that he was calling him from the courtroom. I mean, I don't think that we know he was calling him from the area of the courtroom. But, I mean, there's no indication that anybody else was present in the conversation. It was a telephone call placed by defense counsel to his client. I mean, there wouldn't be any indication in that that somebody else would be present in a two-way telephone call. You know, Ms. Perko, granted it's been 25 years since I looked at a defense attorney ready for trial, said, where's your client? And he says, I don't know. Counsel, go out and call your client and find out where he is. Correct. And come back in here and tell me what happened. Why, if this is considered attorney-client privilege, trial courts can't do that anymore. Well, no. I don't think that's true. Trial counsel cannot relate what the defendant said. I mean, trial counsel can say I was unable to reach. I think he can say I was unable to reach my client. But he did reach him. So what's he supposed to do? Lie? Well, the problem, I think, with that analysis is that we're not claiming a violation of the attorney-client privilege. I mean, there's no basis of error for the violation of the attorney-client privilege that may have occurred when counsel told the court what happened. That's not where the violation occurs. I mean, the violation occurs when this conversation is told to the jury. Well, it's a violation either way. I mean, you can't have a court meeting. Well, no. It's a violation, but there's no error attached to counsel having told the court that he reached his client. His client said that he was in the parking lot, but it was impossible for his client. So is the state of the law now, you're arguing, that any communication between an attorney and a client is privileged? Well, if it's related to the representation. I mean, if you're talking about some other matter. If it's related to scheduling? Wasn't this related to scheduling? I don't think it was related to scheduling. Let's say, again, you're a trial judge, and you're standing there, and you ask the attorney, December 15th is that a good day for trial? And the attorney looks at his client, they whisper to each other. He says, my client says he's got a doctor's appointment that day. Is that privileged? Well, I think you would have to know how that statement was being used. I mean, it's hard to – this is an admission. To me, that is not the issue. The issue is either it's privileged or it's not privileged. It's being used against me now, so it's privileged. If it isn't being used against me, it's not. Well, I mean, it's privileged if it's relating to the matter of the representation. I think there's probably a good argument, although I don't remember seeing any cases on this, but I think there's a good argument that scheduling is not directly related to the actual representation. So how is this different from scheduling?  We're about to start the trial. I'm in the garage. I'll be there in a minute. How is this not related to scheduling? Well, I mean, it's related to scheduling, but that isn't the purpose for which it was used at trial. Well, because – No, I mean, a lot of – I get to either it's privileged or it's not. Well, it's privileged. It's not what's used at trial. It's privileged. So that scheduling you're now saying is privileged. If I talk to my client about scheduling, it's privileged. I don't think that's what happens in this case. If the attorney had called and the defendant said something to the effect of, hey, let me know what is going to happen to me if I don't show up. Now, that's – he's looking for some legal advice there, and then if the attorney comes in and goes, you know, my client's asking about whether or not, you know, he may not show up because he's asking about what's going to happen to him, that may be a violation of privilege right there and then. Or if he just says, hey, where are you?  Okay. I'll be here later. Or if they're not – I mean, I'm just trying to figure out, because generally privileges are supposed to be narrowly confined because they're a derogation of the truth-finding process. And they are. But, I mean, this is a – this is a – I cannot get past the fact that this is a communication between a defense lawyer and his client regarding representation and regarding the client's duty to be present in court and regarding liability that attaches to the failure to be present in court. But that's how it's used. You're going back to how it's used, not how it's – not how it was said. It's akin to me talking to a priest and saying, what time is confession? Or me going to a priest and saying, I just killed somebody. There's a big difference, I think, isn't there? One is the priest-penitent privilege clearly applied in the second. The first, me asking what time confession is heard? Well, in this particular case, when he makes the statement, what is the charge that is before the court? The drug charge. The drug charge. And the lawyer asks, where are you? I'm in the garage. You're going forward to a bail violation charge and saying, well, that was a violation of attorney-client privilege because it went to the charge. It went to the charge afterwards. That was not the charge at the time when the lawyer asked the client, where are you? We're waiting for you here at your drug trial. He didn't say, where are you? We're waiting for you here at your bond violation trial. Well, I mean, with due respect, I don't think that Your Honor's suggestion will hold up when the drug charges are necessarily involved in the violation of bail bond. How did he know at that point he was going to violate his bail bond? It was a scheduling issue. The court asked him where his client went. He said, I'm in the garage. He said, my client's in the garage. Well, with due respect, I don't think. How is it not privileged at that point? With due respect, I don't think it's a scheduling issue. The matter was scheduled. The question is whether or not the defendant was obligated to be present for trial. We know that he was obligated to be present for trial, but the question in this case is, did he know and fail to surrender 30 days after that forfeiture? And it's the knowledge requirements that are important in this case. And, I mean, I'll respectfully submit that there are a lot of violations of the law that occur every day. I mean, I would suspect that all of us at one time or another have been guilty of some traffic violation while we've been driving. Well, let's pretend. Well, you know, maybe only I. But so my point is that the fact that a violation occurs but it's not actionable, yes, that's what I believe the Court is talking about. But when the violation has occurred, and it meaning the violation of the attorney-client privilege, and it is then used in a proceeding, it is at that point at which the violation is actionable, so to speak. Now, the question of trial basically on this charge is willfulness. Did he willfully absent himself from the court? Correct. Regardless of this statement, isn't there sufficient evidence to show that he didn't appear? He posed a bond. He didn't appear. You had the testimony of all of the investigators talking about how they tried to get a hold of him, and he hung up on them, and people were hiding him. So even if you don't have this so-called privilege statement, isn't this evidence sufficient for a conviction on this charge? No. There's no evidence virtually regarding this element of knowledge. It is the element of knowledge in this case. Clearly, the violation of bail bond, the failure to show on the day set for trial, and the failure to surrender within 30 days thereafter were uncontested at trial. So those are not issues. The only issue has to do with the defendant's knowledge, and that knowledge was attempted to be proven by the State through two sources. The one source was this conversation that we've been talking about so far, and the second way was the testimony of one investigator, Investigator Hall, who had nothing whatsoever to do with Mr. Holloway's arrest or anything else with reference to this case except his investigation at the time the violation of bail bond was being pursued as a legal matter. And his crucial testimony had to do with two bail bond sheets. And on the back of the bail bond sheet are directions or instructions or warnings about forfeiture and obedience to your bail bond. Those two bond receipts were introduced into evidence without any type of a proper foundation whatsoever. They are self-authenticating documents, but, however, they were totally hearsay documents in the way they were used at trial and were not competent to prove that that was actually Thomas Holloway's – this is Thomas Holloway's signature on those bail bond receipts, but, more importantly, no proof that he actually was given those receipts and received a copy of those receipts. Well, does he have to know what the consequences are, or does he just have to know what the date is, the date that he's to appear in court? Well – Because if it's the date – I think he – He was in court when he was told the date is August 25th. That's your trial date. Correct. And then he has to know that the – that he failed to surrender within 30 days of the forfeiture. That's – that's the actual – Well, then – That's the actual charge of the bail bond violation. So then they sent that to him. And that he knowingly failed to surrender himself within 30 days after the judgment forfeiture. That's the actual point of knowledge that has to be proven. And we are maintaining that there was no competent proof of that, and, therefore, that as a prejudice from the violation of the attorney-client privilege, that there was insufficient evidence of the element of knowledge at trial. Well, he wasn't living with his grandmother anymore, according to the evidence, and that's the address that he reported as his. Correct. And all of – and all of those inferences might have been proper had the document been properly introduced into evidence so that there would have been some showing beyond a reasonable doubt that, in fact, Mr. Holloway received that document. Because the question – the question here really is where was he advised that he had to surrender himself within 30 days of the forfeiture? That, in our opinion, is the crux of the knowledge requirement on the violation of bail bond charge. But isn't this a bit of a circle that if he had not left the address that the court had, he would have received that notice? And he certainly wasn't – I'm going around in circles for the record. He certainly wasn't at the address that the court had when he was apprehended. He was in Chicago as opposed to Bellwood. I could – that's probably fair. On Wood Street or something? Correct. That's an inference that can be – that he wasn't where he should have been. That's an appropriate inference, isn't it? Well, it's an appropriate inference probably if you assume that those exhibits were properly introduced into evidence. But it's our position that they weren't because it's those bond – it is only those bond receipts, I believe, that the State can rely on for proof that Mr. Holloway knowingly failed to surrender himself within 30 days. Can't a court take judicial notice of a bond cheat? Under certain circumstances, because they're self-authenticating documents. But this was a jury trial. The judicial notice, unless it was communicated to the jury as a finding and a binding finding under some theory, but not in this case, which is – in which Mr. Holloway was entitled to a jury determination. So, I mean, in general, yes, I think that the court could take judicial knowledge but not – judicial notice but not under the circumstances in this case. All right. Ms. Berko, you were with us during the first argument, and you know that our buzzer isn't working. Just his hand is waving. So, for the reasons argued in our briefing this morning, we're asking for reversal of Mr. Holloway's conviction. And you'll have an opportunity to reply if you choose to. All right. Ms. Fleming. Good morning, Your Honors. My name is Mary Fleming on behalf of the people this morning. We're not changing sides. May it please the Court. There was no violation of the attorney claim privilege in this case. The defendant wants to go back in time and make a scheduling conversation subject to the privilege, and there's just no support for doing this retroactively. I'm going to start with clearing up the record. It is our position that the defendant, all over the record, acquiesced to the use of this information. He wanted it in as much as the people did. They were going to stipulate. Didn't he have a concern that he might be precluded on cross from going into more than was brought out on direct? And his concern also was if the live witness went into other things on cross. So, he was concerned about that. But the trial judge said, we're going to make sure he sticks to that. We're not going to talk about privilege things in front of the jury. And the witness counsel says, well, what if he says something like, I don't even know why he wanted a jury trial. He told me he was guilty, and the judge reminds him, this will be a mistrial. We're going to contain this. And the defendant is fine with that, and he uses it, as you said, in closing argument, almost two pages. He starts on page 159 and makes an argument. My dentist calls me three times when I have an appointment. This guy called one time. And then he talks about how he didn't make the conversation even happen. The defendant used this, and that's part of why he forfeited the issue and why there's no attorney-client privilege. In the attorney-client privilege, you have to want to keep the information privileged. And he didn't. This was just scheduling information that he intended for his counsel to do. Well, when he says he's – I get the part. I talked to him 20 minutes ago. He said he was in the parking lot. Right. It's not – I think it's not reasonable to believe he might be in the parking lot still. What about that part? That's a little different than he was in the parking lot. I'm sorry. He's commenting on why he's not there. It's not reasonable to believe that he's in the parking lot still. Indicating to the judge we shouldn't wait anymore. I don't think he's going to appear. And that's not a privilege conversation at all. That's just his, I don't think he's here. And he wasn't. And the judge asked him, did you call him again? I did. And he hung up on me. This wasn't intended to be attorney-client privilege on any of these. It was just scheduling. And as you noted, this happens every day in court. If we accept this argument, then the court can't ask counsel, and counsel can't say, my client's in the bathroom. He'll be here in a minute. But it's rare that that's ever used against a defendant in a subsequent proceeding. Unless it's used against him? Is that what you're saying? No, I said it's rare that it's ever used against a defendant. Oh, that's true. That's true. These things happen all the time, but it's rare that it comes back to haunt the defendant. That's true. Most of these cases that a defendant cited to you where a defendant makes a confession and that's used against him. This is a slightly different case. There just isn't many cases on it. We cited a couple from out of state that were similar that just found these are scheduling issues. Did the defense say something to the effect that he didn't even wait for the defendant to show? That the defense attorney, original defense attorney, didn't even wait for the defendant to show in something about bail money? Did he make a statement, something to that effect? Now, that I do not recall. In closing? Yes, somewhere in the trial. I'm looking at his invited error where he said he didn't even wait for him to show up. Oh, absolutely. His theory was the attorney's making it up, and he says that. I don't think it happened. He says the attorney had every reason to lie in this case. He's got a couple of different theories, that this guy just wants the bail money, or he was so sloppy he didn't even tell me, which is what they talked about in opening, too. You rely on people to let you know. But that's not what happened here. He never comes in and says, I just didn't know that was my trial date. I was in the shower. I had no idea. No. He doesn't show up for trial, and he continues to not show up. He continues to hide and evade everyone, hang up on people, change his residence, whatever it takes. When, at trial, the State was questioning Murphy Aguayo or whatever his name was, did the defense ever object to the questions that the State was asking to him, asking him about the statement? No. And it's not in a post-trial motion, either. Never raised the privilege at that point? No. Never put it in a post-trial motion? No. And we could have ironed it out at that point if there was a concern, but there wasn't because he wanted that information in, too. It was part of his theory of the case. And he argues that it caught some traction, that the jury asking a question shows that they had some concerns about the evidence. So that argument works against him, too. Is there any question that the defendants, what we know to be his grandmother from the testimony, gave Investigator Hall a phone number that she would use to get in touch with Mr. Holloway? Isn't she the one who gave Hall a telephone number for Thomas? Yes. Okay. I do recall that. And they actually caught up with him. And there were a couple of missed phone conversations or conversations that weren't completed? Correct. Okay. Correct. And finally, even if this conversation, if the issue wasn't forfeited, if it was privileged, it was still going to be subject to the crime-fraud exception. Even though his counsel wasn't conspiring with his attorney, he was clearly just the attorney. He said, I called him and said he's here, and then I called him again and he hung up on him. This is exactly what the crime-fraud exception should apply to a case like this. If there are no further questions, do I ask this Court to affirm the judgment? No, thank you. Thank you. Well, our timekeeper has gone. That's a problem. But we'll figure it out. Two minutes. I have really only one matter to respond to, and it has to do with whether or not this issue was raised in the post-trial motion. And I had a considerable discussion about that at the beginning of the reply briefing. We maintained that it was raised in the post-trial motion, paragraphs 21 to 24. And what is particularly important, I think, when you look back at the ultimate claim in this series of paragraphs in the post-trial motion that refers to this conversation, is that paragraph 24 says the right to cross-examine should not be conditioned on the relinquishing of a valuable privilege also based on an individual's constitutional right. Well, did they object at that time? I beg your pardon? Did he object at trial at that time? He did not object at the moment the question was answered. He objected, but the objection, it's our position, was preserved in the eliminate proceedings and the proceedings. Is the case law say that if there's a motion to eliminate that you don't have to object at the time the statement is made? Yes, it does. Yes, it does. Okay. So that is our position with reference to the preservation of the error. Other than that, we would stand in our briefs on the rest of our argument today and request again members to look into the case. Thank you. All right. Counsel, thank you very much for your argument this morning, and thank you for waiting for us after we were a little tardy. After the first case, we will take the matter under advisement. We are now going to adjourn for the day and have a good afternoon.